**UNITED STATES of America,**
**Appellee,**

v.

**Christopher A. WILSON Defendant–**
**Appellant.**

**No. 03–1395.**

United States Court of Appeals,
Second Circuit.

April 8, 2004.

---

Jordan Fiske, Syracuse, NY, for Appellant.

Elizabeth S. Riker, Assistant United States Attorney, for the Northern District of New York, for Appellee, of counsel.

Present: JACOBS, B.D. PARKER, Circuit Judges, and BLOCK,* District Judge.

---

* The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

**SUMMARY ORDER**

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

Defendant–Appellant Christopher Wilson ("Wilson") appeals from his conviction, following a conditional guilty plea in the Northern District of New York, for possession with intent to distribute five or more grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). Wilson appeals the denial of his motion to suppress evidence and statements obtained during the *Terry* stop that resulted in his arrest. In particular, he argues that: (i) the search of his person exceeded constitutional bounds; (ii) his consent to a second search, during which narcotics were discovered, was involuntary; (iii) the search was not "incident to a lawful arrest" because he was searched prior to arrest; and (iv) the arresting officers lacked probable cause to believe that Wilson was dealing drugs because (a) the informant was unreliable; and (b) Wilson's actions prior to his arrest were consistent with innocence. Familiarity is assumed as to the facts, procedural context, and the specification of appellate issues. We affirm for substantially the reasons articulated by the district court.

On appeal from a motion to suppress, we review findings of fact for clear error and conclusions of law *de novo*, viewing the evidence in a light most favorable to the prevailing party—here, the government. *See U.S. v. Harrell*, 268 F.3d 141, 145 (2d Cir.2001) (citations omitted).

1. A warrant is not required to conduct "[a] limited search for weapons ... without probable cause ... in connection with a lawful custodial interrogation that does

not rise to the level of an arrest." *McCardle v. Haddad*, 131 F.3d 43, 48 (2d Cir. 1997) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Such a search must be supported by a "reasonable suspicion," *i.e.*, suspicion based on " 'specific reasonable inferences which he is entitled to draw from the facts in light of [the officer's] experience.' " *United States v. Walker*, 7 F.3d 26, 29 (2d Cir.1993) (quoting *Terry*, 392 U.S. at 27). In connection with a *Terry* stop, an officer "may 'take steps to assure [her]self that the person with whom [s]he is dealing is not armed with a weapon that could unexpectedly and fatally be used against h[er].' " *United States v. Salazar*, 945 F.2d 47, 49 (2d Cir.1991) (quoting *Terry*, 392 U.S. at 23). Where the officer performing the search has been informed "that a given person is dealing in narcotics, and during a permissible pat-down for weapons they feel something that their experience tells them is narcotics, the pat-down gives them probable cause to search the suspect for drugs." *Salazar*, 945 F.2d at 51. In addition to a *Terry* stop, no warrant is required when a detainee consents to be searched. *See United States v. Peterson*, 100 F.3d 7, 11 (2d Cir.1996).

2. Wilson contends that his consent to the second search was involuntary, but the district court found otherwise, and Wilson offers no basis to conclude that those findings were clearly erroneous—the threshold for disturbing the district court's determination on appeal. *Id.* at 11.

3. Officer Marshall stopped the car in which Wilson was traveling after observing several unlawful traffic maneuvers. Wilson does not dispute that stopping the car on this basis was lawful, nor does he dispute Marshall's subsequent decision to search him after he informed her that either he or his associate had a knife. During that search, Marshall discovered a knife and box cutters; while patting-down Wilson, Marshall also noticed a hard lump in his groin area that she suspected contained drugs. Marshall awaited the arrival of her colleagues from the terminal stakeout before confirming that suspicion. Upon arrival, a second officer asked Wilson if he could conduct another search; Wilson consented; and the groin lump was detected. As Wilson himself confirmed, it contained drugs. On these facts, it is clear (as the district court found) that the searches leading to Wilson's arrest were made pursuant to the *Terry* and consent exceptions to the warrant requirement.

4. Even if the searches exceeded the bounds of both voluntary consent and *Terry*, the district court found that the stakeout officers had probable cause to arrest Wilson for narcotics trafficking before the searches occurred. We review determinations of reasonable suspicion and probable cause *de novo*. *Ornelas v. United States*, 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Probable cause does not require " 'a prima facie showing of criminal activity' " nor a "demonstrat[ion] that it is more probable than not that a crime has been or is being committed." *United States v. Ginsberg*, 758 F.2d 823, 828 (2d Cir.1985) (quoting *United States v. Travisano*, 724 F.2d 341, 346 (2d Cir. 1983)). An arrest is justified " 'where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.' " *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (citations omitted)). Whether probable cause is established depends on the totality of the circumstances, *Illinois v. Gates*, 462 U.S. 213, 230–32, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), including the information possessed by the officer prior

to making the arrest and her experience, *Ginsberg*, 758 F.2d at 828. Where probable cause to make an arrest (or reasonable suspicion to make a *Terry* stop) is based (at least in part) on information supplied by an informant, the reliability of the information must be assessed in light of its content and reliability, including: (i) whether the tip came from an anonymous or known source; (ii) whether the tip predicted future actions of the indicated targets that would be difficult to ascertain absent insider information; and (iii) whether the arresting officers corroborated aspects of the tip—both innocent and malignant—prior to making the arrest. *See, e.g., Walker*, 7 F.3d at 29–31; *Illinois v. Gates*, 462 U.S. at 241–46.

In this case, the district court concluded that probable cause to arrest Wilson existed as of the moment he got into the car. That conclusion was based on the court's findings that the tip came from a known source and that nearly every aspect of the tip had been verified by the time Wilson left the terminal, including: (i) when Wilson would arrive at the Syracuse bus terminal from a particular city; (ii) his appearance; (iii) that he would be picked-up by a woman of a certain description; (iv) in a car of a particular make (v) with a specific license plate number; and (vi) where he would be headed. On these facts, the district court did not err in concluding that probable cause to arrest Wilson was established before Trooper Marshall left the Syracuse terminal. Once probable cause was established, it is irrelevant whether the officers' searches of Wilson occurred prior or subsequent to his arrest. *See United States v. Ricard*, 563 F.2d 45, 49 (2d Cir.1977) (quoting *United States v. Jenkins*, 496 F.2d 57, 72–73 (2d Cir.1974) ("The mere fact that the trooper reversed the procedure, conducting the search before the arrest, did not render it illegal as long as probable cause to arrest

existed at the time of the search. . . . Any other holding would, without rational basis, exalt form over substance.")). Furthermore, even if probable cause did not exist at the time Wilson left the terminal, once officer Marshall felt the groin lump that she suspected held drugs, her basis for making the traffic stop ripened into probable cause to search Wilson for narcotics. *See Salazar*, 945 F.2d at 51.

For the reasons set forth above, the judgment of the district court is hereby **AFFIRMED.**